J-S32016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF:  V.L.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  J.E.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2980 EDA 2018 |

Appeal from the Decree Entered September 13, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-AP-0000670-2015,
FID# 51-FN-002194-2015

BEFORE:  SHOGAN, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY NICHOLS, J.:                **FILED AUGUST 15, 2019**

J.E.S. (Father) appeals from the decree granting the petition of T.P. (Mother) to involuntarily terminate Father's parental rights to V.L.S. (Child), born in February 2007.  We affirm.

The trial court summarized the background of this matter as follows:

Mother and Father have been engaged in a lengthy custody battle long before this case arrived in [the trial] court.  Mother and Father were previously married.[1]  Both Mother and Father had substance abuse issues.[2]  In 2008, Mother left the home that she

---

[1] Mother and Father were married in 1999 and divorced in 2010.  N.T., 11/14/17, at 22.  Mother subsequently remarried, and her spouse, M.P. (Stepfather), filed a petition to adopt Child concomitant with Mother's petition to terminate Father's parental rights to Child.

[2] Mother reported that she has been sober since July 2009.  N.T., 9/12/17, at 18, 21.

was sharing with Father and took [] Child with her.[3] . . . Child was one year old at the time.

Around 2010, when . . . Child was around [three] years old, Mother started dating [Stepfather]. On September 25, 2012, Mother married [Stepfather]. Child has been living with [Mother and Stepfather] since they got married.

Trial Ct. Op., 2/26/19, at 1-2 (record citations omitted).

By way of further background, on February 18, 2009, the court presiding over the custody matter (the custody court) granted Father unsupervised visitation, but directed Mother and Father to submit to drug and alcohol testing that same day. Father did not report for testing that day. As a result, Father began supervised visitations with Child.

On November 12, 2009, the custody court granted Mother primary physical and legal custody of Child, with Father having supervised visitation with Child at the Family Court nursery every other Sunday. **See** Order 11/12/09. The custody court suspended Father's visitation from October 2012 to October 2013 and again on February 11, 2015.[4] **See** Order, 10/2/12; Order, 10/30/13; Order, 2/11/15.

_____

[3] Mother testified to leaving the home with Child in March 2008. **Id.** at 17.

[4] Child had difficulties with the visits with Father. Moreover, Child reported that Father threatened to kill Mother with a big knife and that Father touched and kissed Child inappropriately. The custody court directed Robert Tanenbaum, Ph.D., a clinical psychologist, to evaluate Child and Father. Child also referred to Father as "bad dad." N.T., 6/5/18, at 24-25; **see also** N.T., 2/20/18, at 59.

We also note that Father was arrested for possession of marijuana in Maryland in 2013 or 2014. **See** N.T., 9/11/18, at 73, 87. Father also tested positive

In the February 11, 2015 order, the custody court stated:

> Based upon the court's observations of Child . . . as regards her testimony and demeanor while discussing her custodial time with Father, the court finds that presently supervised physical custody of Child . . . with Father is not in Child['s] . . . best interest. Father's supervised physical custody of Child . . . is suspended until further order of court.

Order, 2/11/15, at 2 (full capitalization omitted). The custody court also suspended telephone contact between Father and Child and prohibited Father from posting pictures of Child. *Id.*

Additionally, the custody court directed Father to seek drug and alcohol treatment and follow any treatment recommendations. *Id.* The custody court also ordered Father to participate in any mental health treatment and therapy recommended by a licensed psychologist "to work towards improving his ability to interact with and relate to children of [Child]'s age." *Id.*

On October 5, 2015, Mother filed a petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b),[5] and Stepfather filed a petition for adoption. While a termination hearing was initially scheduled for December 2015, and then April 2016, pursuant to order dated April 5, 2016, and entered April 7, 2016, the proceedings were

_____

for opiates and marijuana on July 3, 2014. *See* Ex. M-2; N.T., 9/12/17, at 24-25.

[5] Amended petitions for involuntary termination were filed on January 13, 2016 and July 11, 2017.

- 3 -

stayed pending resolution of the custody matter, which included Father's filing of a petition to modify custody on November 20, 2015.  Order, 4/7/16.

In November 2016, the custody court found that Father did not comply with "important components" of its February 2015 order and that it was not in Child's best interests to further delay the matter.[6]  Order, 11/8/16, at 1-2. The custody court dismissed Father's outstanding petition to modify custody without prejudice and transferred the matter to the trial court for disposition of the petitions to involuntarily terminate parental rights and for adoption.  *Id.* at 2.

The trial court thereafter held hearings on the petition to terminate Father's parental rights on September 12, 2017, November 14, 2017, February 20, 2018, June 5, 2018, September 11, 2018, and September 13, 2018.  Mother and Stepfather testified in support of the petition.  Mother also presented testimony from three expert witnesses: (1) Dr. Tanenbaum, the clinical psychologist appointed by the custody court, **see** note 4, *supra*; (2) Dolores Berk, Ph.D., Child's therapist at Care Connection Counseling Center; and (3) Thomas Kenney, a court psychologist who conducted mental health assessments of Mother and Father at the request of the custody court.

Father, who was represented by counsel, testified on his own behalf. Child, who was represented by a child advocate, Marilyn Rigmaiden-DeLeon,

---

[6] The custody court did "commend [Father] for the efforts he made."  Order 11/8/16, at 2.

Esq., also participated in the proceedings.[7]  The trial court also spoke with Child, *in camera*, on September 13, 2018, and Child indicated that she supported termination of Father's parental rights.[8]

By decree entered September 13, 2018, the trial court involuntarily terminated the parental rights of Father to Child pursuant to 23 Pa.C.S. §

_____

[7] It appears that the trial court appointed Attorney Rigmaiden-DeLeon on November 5, 2015, to represent both Child's best interests and legal interests. Attorney Rigmaiden-DeLeon stated, "Unfortunately, I wear the hat of the attorney who has to argue what's in the best interest of this child and what the child wants.  As the [c]ourt knows, that task is usually split between two attorneys, but I feel confident that I can point the [c]ourt in the right direction."  N.T., 9/13/18, at 31.  Attorney Rigmaiden-DeLeon argued in support of terminating Father's parental rights.  **Id.** at 31-34.

Here, Child was eleven years old at the conclusion of the hearings.  At the time she spoke with the court, Child was vocal and unwavering as to her desire for Father's parental rights to be terminated and to be adopted by Stepfather.  **Id.** at 14, 18, 22.  We determine that there is no conflict between Child's best interests and legal interests.  As such, we find the requirements of 23 Pa.C.S. § 2313(a) were satisfied.  **See In re Adoption of L.B.M.**, 161 A.3d 172, 174-75, 180 (Pa. 2017) (plurality) (stating that, pursuant to 23 Pa.C.S. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests, defined as a child's preferred outcome); **see also In re T.S.**, 192 A.3d 1080, 1089-90, 1092-93 (Pa. 2018) (finding the preferred outcome of a child who is too young or non-communicative unascertainable in holding a child's statutory right to counsel not waivable and reaffirming the ability of an attorney-guardian *ad litem* to serve a dual role and represent a child's non-conflicting best interests and legal interests).

[8] All counsel were present during the court's questioning of Child.  N.T., 9/13/18, at 11-14.

2511(a)(1), (2), (5), and (b).[9]  On October 10, 2018, Father filed a timely

notice of appeal, as well as a concise statement of errors complained of on

appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  In his Rule 1925(b)

statement, Father claimed:

> [1]. The trial court erred and abused its discretion when it terminated [F]ather's parental rights because termination was not in the best interest of [C]hild.
>
> [2]. The trial court committed reversible error when it involuntarily terminated [F]ather's parental rights without giving primary consideration to the effect that the termination would have on the developmental physical and emotional needs of the child as required by the Adoption Act[,] 23 Pa.[C.S. §] 2511(b).

Father's Rule 1925(b) Statement, 10/10/18.

Father raises the following issues on appeal:[10]

---

[9] The decree memorialized the decision placed by the court on the record at the conclusion of the hearing on September 13, 2018.  N.T., 9/13/18, at 34-36.

[10] We note that Mother and Stepfather filed a motion to quash for failure to file a reproduced record, which was denied without prejudice and subject to be raised in a new motion once the matter was assigned to a merits panel pursuant to order of this Court on May 10, 2019.  Order, 5/10/19.  This issue has not been raised in a new motion.  Regardless, we would find this issue without merit.  The failure to file a reproduced record will not result in dismissal where there has been no prejudice to the parties and where effective appellate review has not been precluded.  *See* Pa.R.A.P. 902 (failure to take any step, other than filing of a timely notice of appeal will not provide grounds for dismissal of the appeal); *Stout v. Universal Underwriters Ins. Co.*, 421 A.2d 1047, 1049 (Pa. 1980) (Pa.R.A.P. 902 provides that the extreme action of dismissal should be imposed by an appellate court sparingly and clearly would be inappropriate where there has been substantial compliance with the rules and when the moving party has suffered no prejudice); *Hagel v. United*

[1]. Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act[,] 23 Pa.[C.S. §] 2511 (a)(1), (a)(2), and (a)(5)?

[2]. Whether the trial court committed reversible error when it involuntarily terminated [F]ather's parental rights without giving primary consideration to the effect that the termination would have on the developmental physical and emotional needs of the child as required by the Adoption Act[,] 23 Pa.[C.S. §] 2511(b)?

Father's Brief at 4.

Father first argues that the record reveals his continued attempts to obtain custody of Child. *Id.* at 7. Father notes that he "tried vigorously to contact and communicate with [Child], but his efforts were continually thwarted by [Mother]. Father filed custody petitions and contempt petitions because [Mother] would withhold [Child] from [Father]." *Id.* at 6.

Father further asserts that he remedied his drug problem and has remained sober for ten years.[11] *Id.* at 7. Father states:

In the instant matter, evidence demonstrates [F]ather's attempt at trying to gain custody of [Child], although [Child] was not in his care. The trial court noted that Father continued to fight for custody of [Child]. Father even remedied his drug problem which was an issue when [Child] was younger. He had been clean for ten years and still attends [Narcotics Anonymous] meetings.

_____

*Lawn Mower Sales & Service Inc.*, 653 A.2d 17 (Pa. Super. 1995). Moreover, pursuant to Pa.R.A.P. 2151(b), a party who is *in forma pauperis*, as Father is, is not required to file a reproduced record.

[11] Although Father asserts that he has been sober for ten years, the trial court noted that Father was arrested for possession of marijuana in 2013 or 2014. *See* Trial Ct. Op., 2/26/19, at 7; *see also* note 4, *supra*. Additionally, as noted above, Father tested positive for opiates and marijuana on July 3, 2014. *See* note 4, *supra*.

*Id.* (record citations omitted). In sum, Father contends that he "has demonstrated his commitment to [remain] close to [Child] because he had a good relationship with her" and "[M]other has not proved that he could not remedy" the conditions causing any incapacity to parent. *Id.* (record citations omitted).

At the outset, we reiterate that in his Rule 1925(b) statement, Father challenged the trial court's rulings on "the best interests of the child" and Section 2511(b). *See* Father's Rule 1925(b) Statement, 10/10/18. Father did not specifically take issue with the trial court's analysis of Section 2511(a).[12] Therefore, we could find Father's argument waived. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017).

Nevertheless, Father's argument would merit no relief. In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning

---

[12] The trial court, however, did address its rulings under Section 2511(a) in its Rule 1925(a) opinion.

multiple hearings.  *See In re R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).  "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence."  *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).  "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result."  *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003) (citation omitted).

The termination of parental rights requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights.  Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.  One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).  We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."  *In re*

*C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (citation and quotation marks omitted).

Here, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Therefore, we first consider whether termination was proper under Section 2511(a)(2). **See id.**

Sections 2511(a)(2) provides as follows:

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

With regard to termination of parental rights pursuant to Section 2511(a)(2), we have indicated:

In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the

causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

***In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." ***In re Adoption of C.D.R.***, 111 A.3d 1212, 1216 (Pa. Super. 2015) (citation and quotation marks omitted).

This Court has stated that Section 2511(a)(2)

does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and strong, continuous parental ties, which the policy of restraint in state intervention is intended to protect. This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it.

***In re Z.P.***, 994 A.2d 1108, 1117 (Pa. Super. 2010) (citation omitted).

Moreover, "[p]arents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." ***In re A.L.D.***, 797 A.2d 326, 340 (Pa. Super. 2002) (citation and quotation marks omitted).

- 11 -

Here, in finding grounds for termination of Father's parental rights pursuant to Section 2511(a)(2), the trial court stated the following:

Applying [**M.E.P.**] and the elements set forth under 2511(a)(2) to the instant case, it is clear that [Mother and Stepfather] met their burden of demonstrating that termination was proper. The evidence established that "incapacity" and "refusal" under 2511(a)(2) existed given that Father repeatedly failed to inquire about [Child] or reach out to [Child]. Father failed to contact [Child's] therapist to ask how she was doing. Father did not make any attempts to send Christmas cards to [Child]. Moreover, the evidence established that once Father found out that he was not listed as the father of [Child] by the school, no efforts were made by Father to remedy that situation. Once his supervised visits were suspended in 2015, he did not reach out to [Child].

Doctor Tanenb[a]um ("Doctor"), a child psychology and an adult child assessment expert, who was appointed in prior proceedings, testified that the relationship between Father and Child "had never been solid" and that no matter what Father tried . . . Child would react negatively for the most part "and it would just be impossible for them to form a relationship." The Doctor further testified that based on his observations, he diagnosed Father with antisocial personality. The Doctor noted that people diagnosed with an antisocial personality are usually insensitive to the needs and feelings of others, they can be very "self[-]centered and may neglect or otherwise misuse what would be helpful in forming relationships with children and adults."

\* \* \*

Based on the foregoing, this [c]ourt found that competent evidence existed to justify the termination of Father's parental rights pursuant to Section 2511(a)(2).

Trial Ct. Op. at 6-7 (record citations omitted).

A review of the record supports the trial court's finding of grounds for termination under Section 2511(a)(2). Although Father vigorously litigated his custody and visitation rights, the record shows that Father did not

demonstrate a significant interest in the day-to-day affairs of Child's life, a capacity to parent Child appropriately, or the awareness or skills to reconcile with Child. Father has taken steps to address his addictions and remain in contact with Child. However, the trial court was entitled to credit Dr. Tanenbaum's opinion that there was a "tremendously uphill battle in terms of imagining any kind of relationship, healthy relationship between [Child] and [Father]." **See** N.T., 2/20/18, at 46-47. Similarly, the trial court was entitled to consider how Father's antisocial personality disorder affected his capacity to parent and his ability to develop a healthy parent-child relationship with Child.[13] **See id.** at 40-43. Therefore, we conclude that the record supports the determination that Father was incapable of parenting Child and could not remedy the situation. **See M.E.P.**, 825 A.2d at 1272. Accordingly, we will not disturb the trial court's findings that termination was justified under Section 2511(a)(2). **See T.S.M.**, 71 A.3d at 267.

Father next argues that the trial court failed to consider the bond between himself and Child, noting that he and Child had a "great relationship" and "fun times when they were together." Father's Brief at 8. Moreover, Father asserts "Mother continually blocked [Father] from strengthening his

---

[13] As this Court has stated, "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." **R.J.S.**, 901 A.2d 502, 513 (Pa. Super. 2006); **see also Z.P.**, 994 A.2d at 1117.

bond with his child. Mother impugned her ill feelings toward [Father] onto their child. Ultimately, she had the child adopt a negative attitude toward [Father]." *Id.* at 12 (citation to record omitted).

Section 2511(b) states, in part:

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b).

The Pennsylvania Supreme Court has stated:

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*T.S.M.*, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted).

- 14 -

Moreover,

> [w]hile a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*C.D.R.*, 111 A.3d at 1219 (citation omitted).

In finding that Child's emotional needs and welfare favor termination pursuant to Section 2511(b), the trial court reasoned as follows:

> In the instant matter, this [c]ourt determined . . . Child would not suffer irreparable emotional harm if Father's parental rights were terminated.  There was compelling testimony offered at the [termination of parental rights] hearings that . . . Child is not bonded with Father.  Father failed to offer any evidence establishing the existence of a parent-child bond.  The testimony demonstrated that . . . Child's primary bond is with [Stepfather]. [] Child calls [Stepfather] dad and Father[ by his first name]. Furthermore, this [c]ourt found Father's significant gap in visitation and lack of contact with . . . Child insufficient to foster a meaningful and healthy parental connection.  Additionally, in determining that termination would best serve the needs and welfare of . . . Child, this [c]ourt considered that Father has not been able to meet . . . Child's emotional, physical, and developmental needs.[14]  In fact, [Stepfather] is the one that has been performing fatherly duties.  For the foregoing reasons, this

---

[14] Notably, Dr. Berk testified that Child is "flourishing" absent visitation with Father.  N.T., 6/5/16, at 29-30, 41.  When asked to describe Child's progress approximately three years since Father's visitation ended, Dr. Berk stated, "She is flourishing, she is thriving, she is a different child.  She is involved in school activities, she has friends at school, she has cheerleading and other activities.  She has her animals that she loves.  She is a child that is coming from a well-adjusted, loving family." *Id.* at 41.

[c]ourt properly granted [Mother and Stepfather's] petition to involuntarily terminate the parental rights of Father pursuant to Section 2511(b).

Trial Ct. Op. at 9 (record citations omitted).

Our review reveals that the record supports the trial court's finding that Child's developmental, physical and emotional needs and welfare favor termination of Father's parental rights pursuant to Section 2511(b). *See T.S.M.*, 71 A.3d at 267. While Father loves Child, his own feelings of love and affection for Child, alone, will not preclude termination of parental rights. *See C.D.R.*, 111 A.3d at 1219.

Here, at the time of the conclusion of the hearings, Father's visitation with Child had been suspended for three and a half years, and Child is entitled to permanency and stability. As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Z.P.*, 994 A.2d at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted).

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Father's parental rights under Sections 2511(a)(2) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/15/19</u>